IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ARKANSAS
CIVIL DIVISION

KATIE GILLENWATER, individually, and on
behalf of all other similarly situated,                                    PLAINTIFFS

vs.                                    49 C V - 21 - 68

COMMONSPIRIT HEALTH;
CHI ST. VINCENT HOT SPRINGS;
CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a
Mercy Home Health;
CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS;
MERCY HEALTH;
JOHN DOE EMPLOYEES 1 – 5; and
JOHN DOE INSURANCE COMPANIES 1 – 10                    DEFENDANTS

## CLASS ACTION COMPLAINT

Plaintiff KATIE GILLENWATER, by and through her undersigned attorneys, bring this

class action lawsuit on behalf of herself and all other persons similarly situated, and for the Class

Action Complaint against Defendants COMMONSPIRIT HEALTH, CHI ST. VINCENT HOT

SPRINGS, CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health,

CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS, MERCY HEALTH, JOHN DOE

EMPLOYEES 1 – 5, and JOHN DOE INSURANCE COMPANIES 1 – 10, Plaintiff alleges with

personal knowledge with respect to herself individually and on information and belief derived

from, among other things, investigation of counsel and review of documents as to all other matters,

as follows:



Page 1 of 26

## I. INTRODUCTION

1.     Ms. Gillenwater along with other Defendants' patients has had their protected health information ("PHI") accessed, viewed, and potentially disseminated without their consent due to systemic failures by the Defendants. Ms. Gillenwater and others trusted Defendants to guard and protect their personal health information from unauthorized viewing, yet Defendants violated that trust. Ms. Gillenwater brings this class action lawsuit on behalf of herself and others to hold Defendants accountable.

## II. PARTIES

2.     Plaintiff incorporates by reference herein the preceding paragraph as though stated word-for-word.

### A. Plaintiff Katie Gillenwater

3.     Plaintiff KATIE GILLENWATER is a natural person with a principal place of residence in Glenwood, Arkansas.

### B. CommonSpirit Health

4.     Defendant COMMONSPIRIT HEALTH is a Colorado nonprofit corporation with its headquarters located in Chicago, Illinois.

5.     Defendant COMMONSPIRIT HEALTH is authorized to do business in the State of Arkansas.

6.     Defendant COMMONSPIRIT HEALTH is the parent company of CHI ST. VINCENT HOT SPRINGS, CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health, and MERCY HEALTH.

7.     Defendant COMMONSPIRIT HEALTH is responsible for maintenance and confidentiality of patients' protected health information (PHI).

MONTGOMERY COUNTY CLERK     CTX-000000043741     PAGE 2 OF 34

8.      Defendant COMMONSPIRIT HEALTH may be served with process in this action by delivering summons and copy of this complaint to its registered agent for service, C T Corporation System, located at 124 West Capitol Ave, Suite 1900, Little Rock, Arkansas 72201.

9.      Defendant COMMONSPIRIT HEALTH and/or by and through its subsidiaries, derives substantial revenues from business in Arkansas.

### C. CHI St. Vincent Hot Springs

10.     Defendant CHI ST. VINCENT HOT SPRINGS is a domestic nonprofit corporation with its principal place of business in Garland County, Arkansas.

11.     Defendant CHI ST. VINCENT HOT SPRINGS is authorized to do business in the State of Arkansas.

12.     Defendant CHI ST. VINCENT HOT SPRINGS is responsible for maintenance and confidentiality of patients' protected health information (PHI).

13.     Defendant CHI ST. VINCENT HOT SPRINGS may be served with process in this action by delivering summons and copy of this complaint to its registered agent for service, C T Corporation System, located at 124 West Capitol Ave, Suite 1900, Little Rock, Arkansas 72201.

14.     Defendant CHI ST. VINCENT HOT SPRINGS and/or by and through its subsidiaries, derives substantial revenues from business in Arkansas.

### D. CHI St. Vincent Hospital Hot Springs d/b/a and a/k/a Mercy Home Health

15.     Defendant CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health is a domestic nonprofit corporation with its principal place of business in Garland County, Arkansas.

16.     Defendant CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health is authorized to do business in the State of Arkansas.

17.    Defendant CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health is responsible for maintenance and confidentiality of patients' protected health information (PHI).

18.    Defendant CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health may be served with process in this action by delivering summons and copy of this complaint to its registered agent for service, C T Corporation System, located at 124 West Capitol Ave, Suite 1900, Little Rock, Arkansas 72201.

19.    Defendant CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health and/or by and through its subsidiaries, derives substantial revenues from business in Arkansas.

### E. CHI St. Vincent Medical Group Hot Springs

20.    Defendant CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS is a domestic nonprofit corporation with its principal place of business in Garland County, Arkansas.

21.    Defendant CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS is authorized to do business in the State of Arkansas.

22.    Defendant CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS is responsible for maintenance and confidentiality of patients' protected health information (PHI).

23.    Defendant CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS may be served with process in this action by delivering summons and copy of this complaint to its registered agent for service, C T Corporation System, located at 124 West Capitol Ave, Suite 1900, Little Rock, Arkansas 72201.

24.    Defendant CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS and/or by and through its subsidiaries, derives substantial revenues from business in Arkansas.

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 4 OF 34

**F. Mercy Health**

25.     Defendant MERCY HEALTH is a Missouri nonprofit corporation with its principal place of business in Chesterfield, Missouri.

26.     Defendant MERCY HEALTH is authorized to do business in the State of Arkansas.

27.     As of November 5, 2021, the status on the Arkansas Secretary of State's webpage states that Defendant MERCY HEALTH is Not Current.

28.     Defendant MERCY HEALTH is responsible for maintenance and confidentiality of patients' protected health information (PHI).

29.     Defendant MERCY HEALTH may be served with process in this action by delivering summons and copy of this complaint to its registered agent for service, CSC-Lawyers Incorporating Service Company, located at 221 Bolivar Street, Jefferson City, Missouri 65101.

30.     Defendant MERCY HEALTH and/or by and through its subsidiaries, derives substantial revenues from business in Arkansas.

31.     JOHN DOE EMPLOYEES 1 – 5 are other unknown tortfeasors who are employees or agents of Defendants that on one or more occasions between August 21, 2017, and September 6, 2020 accessed health information of Plaintiffs and other class members. Despite the best efforts of Plaintiff and their counsel, the identities of John Does 1 – 5 are unknown to Plaintiff and her counsel at this time. Upon determining the identity of the unknown parties, Plaintiff will timely amend the Complaint and specifically designate the names of the unknown parties. Plaintiff has attached an Affidavit to this Complaint pursuant to Ark. Code Ann. § 16-56-125.

32.     JOHN DOE INSURANCE COMPANIES 1 – 10 are other unknown tortfeasors who are insurers, insurance pools or similar fund maintained by Defendants for payment or indemnification of Defendants' liabilities. It is unknown of Defendants have insurance coverage for the actions giving rise to this Class Action Complaint. Upon determining the identity of the

unknown parties, Plaintiff will timely amend the Complaint and specifically designate the names of the unknown parties. Plaintiff has attached an Affidavit to this Complaint pursuant to Ark. Code Ann. § 16-56-125.

33.     At all times material hereto, each Defendant was acting as the agent and employee of each and every other defendant and was acting in the course and scope of that agency and employment.

34.     Furthermore, the mergers, sales, and acquisitions of the various Defendants named above transferred both corporate assets and liabilities through to the successor corporations and/or partnerships. The above-named Defendants are liable for the acts and omissions, including but not limited to negligence and damages as pled below, of their subsidiaries, agents, employees, and/or servants of said Defendants and for their parent and principal. At all times relevant hereto, the above-named Defendants acted through their duly authorized subsidiaries, agents, employees, and/or servants who were acting within the scope of their employment and/or agency and in furtherance of the Defendants' business, whether through its principal or subsidiary.

35.     Finally, upon information and belief, the acts of the Defendants were conducted in concert pursuant to an agreement amongst themselves to act in a collective manner. All defendants, therefore, are jointly and severally liable for the acts complained of herein.

### III. JURISDICTION AND VENUE

36.     Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

#### A. Jurisdictional Facts regarding All Defendants

37.     This Court has jurisdiction over the subject matter of this lawsuit pursuant to Art. 2 § 7 which guarantees Arkansas citizens access to Arkansas courts and juries.

MONTGOMERY COUNTY CLERK      CTX-000000043741      PAGE 6 OF 34

38.     Jurisdiction is proper under Ark. Code Ann. § 16-13-201, which states that circuit courts shall have original jurisdiction of all actions and proceedings for the enforcement of civil rights or the redress of civil wrongs, except when exclusive jurisdiction is given to other courts. Jurisdiction is also proper under Ark. Const., Amend. 80, § 6, which states that circuit courts shall have jurisdiction in all civil cases.

39.     This Court has general personal jurisdiction over all Defendants because the Defendants own, operate, and treat patients at the subject hospital where Plaintiff and others similarly situated received treatment here in Arkansas.

40.     This Court has general personal jurisdiction over Separate Defendants CHI ST. VINCENT HOT SPRINGS, CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health, and CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS because each Defendant is an Arkansas nonprofit corporation with their corporate headquarters located in Arkansas; thus, each Defendant is "at home" in the State of Arkansas.

41.     This Court has specific personal jurisdiction over all Defendants because the Defendants committed tortious acts in Arkansas, including, but not limited to, the release of protected health information (PHI) that is the subject of this litigation.

42.     When assessing specific personal jurisdiction, the Court's first step "is to determine whether the connection between the forum and the episode-in-suit could justify the exercise of specific jurisdiction" because courts have the "ability to hear claims against out-of-state defendants when the episode-in-suit occurred in the forum or the defendant purposefully availed itself of the forum,"[1] and this case far exceeds that threshold.

---

[1] *Daimler AG v. Bauman*, 134 S. Ct. 746, 755, 762 (2014).

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 7 OF 34

43.    The affiliation between the Arkansas forum and the episode-in-suit warrants specific jurisdiction, which is properly exercised based on an "affiliation between the forum and the underlying controversy [such as] an occurrence that takes place in the forum"[2] (like the location of the collection of the PHI in this controversy) so long as the fairness factors are met.[3]

44.    When assessing specific personal jurisdiction, the Court's second step "is to consider several additional factors to assess the reasonableness of entertaining the case."[4]

45.    When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State ... it has clear notice that it is subject to suit there [and if] the sale of a product of a manufacturer ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer ... to serve *directly or indirectly,* the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others,"[5] and this aptly describes Defendants' relationship with Arkansas.

46.    Where nonresident defendants "'purposefully derive benefit' from their interstate activities ... it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities [because] the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed,"[6] and Defendants have purposefully obtained such benefits.

---

[2] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,* 137 S. Ct. 1773, 1780 (2017).
[3] *Gibbs v. PrimeLending,* 2011 Ark. 255, 381 S.W.3d 829 (citing *International Shoe Co. v. Washington,* 326 U.S. 310 (1945)); *John Norrell Arms, Inc. v. Higgins,* 332 Ark. 24, 962 S.W.2d 801 (1998).
[4] *Daimler AG,* 134 S. Ct. at 762.
[5] *See World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
[6] *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473–74, 105 S. Ct. 2174, 2182–83 (1985).

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 8 OF 34

47.    A nonresident defendant is subject to personal jurisdiction under the Arkansas long-arm statute to the maximum extent permitted by the Due Process of Law Clause of the Fourteenth Amendment of the United States Constitution.[7]

48.    The Arkansas Supreme Court has considered three factors in determining whether due process requirements have been satisfied when personal jurisdiction has been exercised over nonresident defendants. Those three factors[8] include:

a.    A defendant must purposefully avail himself of privilege of acting in forum statue or causing a consequence in forum state;

b.    Cause of action must arise from or relate to defendant's contacts with forum state; and

c.    Acts of defendant or consequences caused by defendant must have substantial enough connection with forum state to make exercise of personal jurisdiction over defendant reasonable.

49.    As outlined in this Complaint, all three factors have been satisfied for all nonresident Defendants in this action.

50.    Furthermore, there is no burden on Defendants to litigate this civil action in the Arkansas forum where the PHI was collected.

51.    Arkansas has an interest in adjudicating this dispute which occurred in Arkansas, which involved the assessment of conduct that occurred in Arkansas, and which significantly harmed Arkansas residents.

52.    Plaintiff's interest in obtaining convenient and effective relief militates in favor of litigating in the Arkansas forum where the witnesses to the data collection are located.

---

[7] A.C.A. § 16-4-101.
[8] *Lawson v. Simmons Sporting Goods, Inc.*, 2019 Ark. 84; 569 S.W.3d 865 (2019).

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 9 OF 34

53.    The interstate judicial system's interest in obtaining the most efficient resolution of controversies warrants litigating this case in Arkansas where the defective policies at issue failed, where the data collection occurred, and where the victims reside.

54.    The shared interest of the several States in furthering fundamental substantive social policies warrants litigating this case in Arkansas where the defective policies at issue failed, where the data collection occurred, and where the victims reside.

55.    Defendants own, manage, and operate the medical facility where the data collection occurred. This medical facility is located in Arkansas.

56.    The exercise of specific personal jurisdiction over Defendants pursuant to the Arkansas long-arm statute is consistent with the Due Process Clause and the principles of fundamental fairness by virtue of Defendants doing business in Arkansas.

57.    Defendants engage in such continuous, systematic behavior in Arkansas, and Defendants continually conduct business in Arkansas that each separate Defendant is "at home" in Arkansas.

58.    Defendants actively engage in the promotion and use of their medical facilities in Arkansas.

59.    Defendants continuously advertise, market, distribute, and sell access to their medical facilities inside of Arkansas, and Defendants derive substantial profit from their business due to its transactions in Arkansas.

60.    Defendants purposefully avail themselves of the privilege and opportunity to conduct business in Arkansas.

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 10 OF 34

61.    It is reasonable to subject Defendants to suit in Arkansas because the medical facility, which is the source of harm to the Plaintiff and others similarly situated, is located in Arkansas.

62.    Because Defendants purposefully derive benefit from its interstate activities, it would be unfair to allow Defendants to escape having to account in Arkansas for consequences that arise proximately from Defendants' interstate activities.

63.    Allowing the Defendants to escape jurisdiction would improperly allow Defendants to wield the Due Process Clause as a territorial shield to avoid interstate obligations that Defendants have voluntarily assumed.

### B. Venue

64.    Venue is proper under Ark. Code Ann. § 16-60-101(a), which states that all actions for damages shall be brought in (1) the county in which a substantial part of the event or omissions giving rise to the cause of action accrued; (2) the county where an individual defendant resided at the time of the event or omission giving rise to the cause of action; or (3) in the county in which the plaintiff resided at the time of the event or omissions giving rise to the cause of action. This case meets the last scenario enumerated in this statute because Plaintiff resided in Montgomery County at the time of the event or omission giving rise to the cause of action.

65.    This action is not removable to federal court because Plaintiff asserts no federal claim or cause of action. Furthermore, this action is not removable to federal court because diversity of citizenship does not exist since (a) Plaintiff and Separate Defendants CHI ST. VINCENT HOT SPRINGS, CHI ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health, and CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS are citizens of the State of Arkansas and (b) Separate Defendants CHI ST. VINCENT HOT SPRINGS, CHI

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 11 OF 34

ST. VINCENT HOSPITAL HOT SPRINGS d/b/a and a/k/a Mercy Home Health, and CHI ST. VINCENT MEDICAL GROUP HOT SPRINGS are citizens of the forum State of Arkansas. Thus, removal based on diversity of citizenship is improper under 28 U.S.C. §§1441(b)(2).

## THE DATA BREACH

66.    Plaintiff brings this suit on behalf of herself and a Class of similarly situated individuals against Defendants for their failure to secure and protect Plaintiffs' and Class members' protected health information ("PHI").

67.    A person's PHI is highly regulated and is afforded many protections due to the privacy concerns if the PHI is disclosed.

68.    CommonSpirit Health (hereafter "CommonSpirit") is the largest Catholic health system in the United States.

69.    CHI St. Vincent Hot Springs, CHI St. Vincent Hospital Hot Springs, and CHI St. Vincent Medical Group Hot Springs (hereafter "CHI St. Vincent Defendants") are members of CommonSpirit.

70.    Mercy Health is a partner of the CHI St. Vincent Defendants, who assists with radiology healthcare services for patients of the CHI St. Vincent Defendants.

71.    All persons or businesses that acquire, own or license personal information about Arkansas residents are to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect all personal information from unauthorized access, destruction, use, modification, or disclosure.

72.    CommonSpirit and CHI St. Vincent Defendants jointly create and implement policies regarding the protected health information of their patients to ensure patients' PHI is not subject to unauthorized access, destruction, use, modification, or disclosure.

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 12 OF 34

73.    All members of CommonSpirit participate in an Organized Health Care Arrangement (the CommonSpirit Health OHCA) to share health information within CommonSpirit for treatment, payment, and joint health care operations.

74.    As a member of the CommonSpirit OHCA, the CHI St. Vincent Defendants and CommonSpirit participate in the CommonSpirit Health Information exchange which stores protected health information of patients.    Individuals employed by, or associated with CommonSpirit Health OHCA, including Mercy Health, may use and share stored PHI of patients for treatment, payment, and health care operations.

75.    The PHI stored by Defendants includes information on a patient's healthcare such as basic identifying information like a patient's name, address, age, race, phone, date of birth, medical record number, and billing information.

76.    CommonSpirit and the CHI St. Vincent Defendants enforce the jointly created privacy policies on all health care providers who come to their location to care for patients, including doctors, nurses, technicians and others.

77.    Defendants failed to take reasonable security precautions.

78.    On one or more occasions between August 21, 2017, and September 6, 2020, John Doe employee of Mercy Health improperly accessed health information of patients the CHI St. Vincent Defendants who received radiology healthcare services.

79.    John Doe's reasons for accessing the health information of CHI St. Vincent Defendants' patients was not related to or necessary for patient care purposes.

80.    On December 7, 2020, Defendants learned of an incident regarding the improper access to their patients' protected health information.

81.     On or about January 21, 2021, Defendants issued a letter to Plaintiff and Class Members notifying them of the breach of their private health information including their name, date of birth, medical record number, radiology image, the name of physician who ordered the radiology image and the date of service.

82.     Defendants notified Plaintiff and Class Members of the breach because not only was their information improperly accessed, but there is more than a low probability that their information has actually been compromised.

83.     Plaintiff and Class Members were instructed to carefully monitor her credit reports, billing and account statements for unauthorized activity and remain vigilant for any phone calls or e-mails requesting her personal information.

84.     As a result of the breach of their protected health information, Plaintiff and Class Members must be vigilant and review their credit reports for incidents of identity theft, and to educate themselves about security freezes, fraud alerts, and other steps to protect themselves against identify theft.

85.     In the notification letter, Defendants did not mention what steps, if any, that they would take to remediate the harm from the data breach, including whether they would offer protective services such as credit monitoring, identity theft protection, or "dark web" searches.

86.     Once the private information about someone's PHI is disclosed, the information explodes beyond the control of the Defendants and spreads like wildfire throughout the general public.

87.     Upon learning of the breach, Plaintiff immediately faced the anxiety, embarrassment, shame, concern, and stigma of knowing that the confidentiality of her medical information has been destroyed.

MONTGOMERY COUNTY CLERK     CTX-000000043741     PAGE 14 OF 34

88.    Defendants are required to maintain the strictest privacy and confidentiality of patient medical records.

89.    Defendants allowed 3+ years of the unauthorized access, viewing, and potentially dissemination of Plaintiff and others confidential PHI.

## CLASS ACTION ALLEGATIONS

90.    Plaintiff brings this action pursuant to Ark. R. Civ. P. 23 on behalf of herself and all Members of the Class and Subclasses defined as:

> Patients and customers of Defendants whose medical information was released as a result of the unauthorized disclosure of their medical records and information on or about August 21, 2017, through September 6, 2020.

91.    The Excluded from the Class are Defendants, any affiliate, parent, employee or subsidiary of Defendants; any officer, director, or employee of Defendants; anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned as well as his or her immediate family.

92.    This action has been brought and may be properly maintained as a class action under Ark. R. Civ. P. 23.

93.    **Numerosity of the Class – Rule 23(a)(1).** Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their addresses can be obtained from information and records in Defendants' possession and control. Class members may be notified of the pendency of this action by mail or by published notice or other appropriate methods. Upon information and belief, the size of the class is approximately 11,187 class members.

94.    **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2).** Common questions of law and fact exist as to all members of the Class and predominate

Page 15 of 26

over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Ark. R. Civ. P. 23, include:

    a.   Whether Defendants breached its fiduciary duties to Plaintiff and the Class;

    b.   Whether Defendants breached its contract with Plaintiff and the Class;

    c.   Whether Defendants invaded Plaintiff's and the Class's privacy;

    d.   Whether Defendants acted negligently with respect to Plaintiff and the Class;

    e.   Whether Plaintiff and the other Class members are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and/or a permanent injunction;

    f.   Whether Plaintiff and the other Class members are entitled to damages, including punitive damages, and/or other monetary relief; and

    g.   Whether this case may be maintained as a class action under Ark. R. Civ. P. 23.

95.    **Typicality – Rule 23(a)(3)**. Plaintiff's claims are typical of the claims of the Class because she was a patient of Defendant, and her PHI was compromised in the subject data breach. Moreover, Plaintiff and the Class sustained similar injuries because of Defendants' uniform conduct, and their legal claims all arise from the same policies and practices of Defendants.

96.    **Adequacy of Representation – Rule 23(a)(4)**. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

97.    **Predominance and Superiority – Rule 23(b)**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and

MONTGOMERY COUNTY CLERK      CTX-000000043741      PAGE 16 OF 34

expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

98. In the alternative, the Class may be certified under Ark. R. Civ. P. 23 because:

    a. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

    b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    c. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 17 OF 34

## COUNT I – INVASION OF PRIVACY
### (On Behalf of the Plaintiff and Class for Invasion of Privacy)

99.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein. Plaintiff asserts this cause of action on behalf of the Class against the Defendants.

100.    At all times relevant hereto, Defendants had the duty to keep their patients' medical information private because of their provider-patient relationship with its patients, which includes Plaintiff and the Class Members.

101.    Defendants breached their duty to Plaintiff and the Class members by intentionally disclosing highly sensitive and confidential medical information to the public without obtaining authorization from Plaintiff and the Class members.

102.    Defendants breached their duty to keep Plaintiff's medical information private by publicizing matters of a highly sensitive nature to the public concerning the private life and medical information of Plaintiff and the Class members.

103.    As a direct result of Defendants' breach of their duty of confidentiality and privacy and the disclosure of Plaintiff's confidential medical information, Plaintiff and the Class suffered damages including, without limitation, lost medical expenses, lost benefit of the bargain, lost services, overpayment for privacy services which Plaintiff did not receive, fraud in the inducement wherein Plaintiff would not have obtained treatment from Defendants knowing that their medical information was not safe and protected, loss of enjoyment of life, Plaintiff paying more for privacy services which she did not receive, embarrassment, humiliation, and emotional distress.

## COUNT II – NEGLIGENT TRAINING AND SUPERVISION
### (On behalf of Plaintiff and the Class for Negligent Training and Supervision)

104.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein. Plaintiff asserts this cause of action on behalf of the Class against the Defendants.

105.    At all times relevant hereto, Defendants owed a duty to Plaintiff and the Class to train and supervise competent employees and agents regarding its duties of privacy and confidentiality owed to its patients.

106.    Defendants breached its duty to Plaintiff and the Class by allowing its employees, agents, or representatives to disclose confidential medical information to the public.

107.    As a direct result of Defendants' negligent training and supervision, Plaintiff and the Class suffered damages including, without limitation, lost medical expenses, lost benefit of the bargain, lost services, overpayment for privacy services which Plaintiff did not receive, fraud in the inducement wherein Plaintiff would not have obtained treatment from Defendants knowing that their medical information was not safe and protected, loss of enjoyment of life, Plaintiff paying more for privacy services which she did not receive, embarrassment, humiliation, and emotional distress.

## COUNT III – BREACH OF FIDUCIARY DUTY
### (On behalf of Plaintiff and the Class for Breach of Fiduciary Duty)

108.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein. Plaintiff asserts this cause of action on behalf of the Class against the Defendants.

109.    Defendants have a fiduciary duty of confidentiality to its patients.

110.    Defendants breached their duty to Plaintiff and the Class by disclosing its customers' confidential medical information to third parties without consent or authorization.

111.    As a direct result of Defendants' breach of their fiduciary duty, Plaintiff and the Class suffered damages including, without limitation, lost medical expenses, lost benefit of the bargain, lost services, overpayment for privacy services which Plaintiff did not receive, fraud in the inducement wherein Plaintiff would not have obtained treatment from Defendants knowing that their medical information was not safe and protected, loss of enjoyment of life, Plaintiff paying

more for privacy services which she did not receive, embarrassment, humiliation, and emotional distress.

## COUNT IV – NEGLIGENCE
### (On behalf of Plaintiff and the Class for Negligence)

112.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein. Plaintiff asserts this cause of action on behalf of the Class against the Defendants.

113.    Defendants owed Plaintiff and the Class a duty to exercise the highest degree of care in safeguarding and protecting the medical information of its patients. This duty included securing medical records and information and implementing policies regarding properly securing and protecting medical records and information of Plaintiff and the Class from unauthorized disclosure.

114.    Defendants further owed Plaintiff and the Class a duty to notify them within a reasonable time frame of any breach to the security of their PHI under the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320(d), et seq. ("HIPAA") and other state and federal laws referenced herein. Defendants also owed a duty to timely and accurately disclose to Plaintiff and the other Class Members the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class members to take appropriate measures to protect their PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

115.    Defendants breached its duty to exercise reasonable care in protecting the personal information of Plaintiff and the Class by (1) failing to implement security measures to protect the information of Plaintiff and the Class; (2) failing to implement policies regarding the security of medical records and information; and (3) failing to implement security measures such as properly securing medical records.

116.    As a direct result of Defendants' negligence, Plaintiff and the Class suffered damages including, without limitation, lost medical expenses, lost benefit of the bargain, lost services, overpayment for privacy services which Plaintiff did not receive, fraud in the inducement wherein Plaintiff would not have obtained treatment from Defendants knowing that their medical information was not safe and protected, loss of enjoyment of life, Plaintiff paying more for privacy services which she did not receive, embarrassment, humiliation, and emotional distress.

## COUNT V – BREACH OF CONTRACT
### (On behalf of Plaintiff and the Class for Breach of Contract)

117.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein. Plaintiff asserts this cause of action on behalf of the Class against the Defendants.

118.    In Defendants' Notice of Privacy Practices[9], it states:

**OUR PLEDGE TO YOU**
We understand that your protected health information is private and personal. We are committed to protecting it. Hospitals, clinics, doctors, home health and hospice staff, and other staff members make a record each time you visit. This notice applies to all the records of your care at the facility, whether created by staff members or your doctor. Your doctor and other health care providers may have different practices or notices about their use and sharing of protected health information in their own offices or clinics that are not affiliated with CommonSpirit Health.

We are required by law to:
- keep your protected health information private.
- give you this notice describing our legal duties and privacy practices for your protected health information.
- notify you as outlined in state and federal law if a breach of your unsecured protected health information has occurred.
- follow the terms of the notice that is currently in effect.

**WHO MUST FOLLOW THIS NOTICE?**
We provide you, the patient, with health care by working with doctors and many other health care providers (referred to as **we, our** or **us**). This is a joint notice of our information privacy practices. The following people or groups will follow this notice:

---

[9] A copy is attached as Exhibit A.

Page 21 of 26

- all CommonSpirit Health members, including hospitals, clinics, home health agencies, outpatient services, mobile units, hospice agencies, skilled nursing facilities, etc.
- any health care provider who comes to our locations to care for you. These professionals include doctors, nurses, technicians, physician assistants and others.
- all departments and units of our organization, including skilled nursing, home health, clinics, outpatient services, mobile units, hospice, rehab facilities, and emergency departments.
- our employees, students and volunteers, including those at regional support offices and affiliates.

**Right to Receive Notice of a Privacy Breach:** We will tell you if we discover a breach of your health information. Breach means that your health information was disclosed or shared in an unintended way and there is more than a low probability that it has been compromised. The notice will tell you about the breach, about steps we have taken to lessen any possible harm from the breach, and actions that you may need to take in response to the breach.

119.    Defendant's notice constitutes an agreement between Defendant and its patients.

120.    These representations go beyond what Defendant is already obligated to do under applicable laws.

121.    Defendants breached their agreement with Plaintiff and the Class by (1) failing to implement security measures to fulfill their agreement with their patients, and (2) failing to implement security measures such as securing medical records and information.

122.    Plaintiff and the Class have been damaged by Defendants' breach of their obligations because their personal and medical information has been compromised and the loss of costs paid to Defendants for the maintenance of the confidentiality of medical information.

123.    It was a violation of Defendants' privacy covenants, warranties, and promises to disclose Plaintiff's and Class Members' highly confidential medical records and information in the manner described above. As a result of Defendants' breach of contract, Plaintiff and Class Members did not receive the full benefit of their bargain and instead received services that were less valuable than described in their contracts.

124.    As part of the contract between Defendants and Plaintiff and the Class Members, Defendants offered to provide health care and health care related services in exchange for their business and payments from Plaintiff and the Class Members or their insurers on their behalf, Defendants promised: (a) "[We] will protect your medical records and privacy"; (b) that their rules to protect Plaintiff and the Class Members' privacy will be followed by all workforce members of the site where they are being treated; (c) it will use security procedures to protect personal information which Plaintiff and the Class Members submit to it from misuse or unauthorized disclosure; (d) that the personal information that Plaintiff and the Class Members submit to it is stored in a secure database behind an electronic firewall; (e) that access to medical records and information is limited to a few computer technicians as well as outside vendors who may occasionally assist it in maintaining and improving our hardware and software tools; and (f) that it has a compliance program that includes policies implementing patient privacy and security requirements mandated under federal and state law.

125.    Defendants also agreed to provide its health care services in a professional manner and only to share it with authorized employees as part of their work to support patient care.

126.    Plaintiff and Class Members accepted Defendants' offer and went to, and paid, Defendants for their health care services. Plaintiff and the Class Members contracted for and expected to receive the privacy benefits in accordance with the terms and warranties set forth above. Defendants breached the privacy obligations under its contract as set forth above and Plaintiff and the Class Members have been injured and damaged as a result thereof.

127.    Plaintiff and the other Class Members performed their obligations under the agreements. Defendants violated the terms of the contract by disclosing and allowing unauthorized access to Plaintiff's and the other Class Members' confidential medical records and information

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 23 OF 34

for unauthorized purposes without first obtaining Plaintiff's or the other Class Members' consent or encrypting or otherwise protecting the information in a form which could not reasonably be used to identify them.

128.    Defendants breached its contracts with Plaintiff and Class Members by failing to reasonably safeguard its systems and health information from the breaches. Defendants violated the terms of the contract by failing to take appropriate measures to protect Plaintiff's and the other Class Members' personal information in accordance with its promises and representations. Defendants violated the agreement by failing to comply with applicable laws regarding the access, correction, and/or deletion of confidential medical records and information, and notification to affected persons.

129.    Plaintiff and Class Members have been injured because of Defendants' breach of contract and are entitled to damages.

130.    As a direct result of Defendants' unlawful misconduct and breach of its contract with Plaintiff and the Class members, Plaintiff and the Class suffered additional pecuniary loss and injury-in-fact, including without limitation the improper disclosure of their confidential medical records and information, lost benefit of their bargain, lost value of their confidential health information, attorney fees and costs.

## PUNITIVE DAMAGES

131.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein. Plaintiff asserts this cause of action on behalf of the Class against the Defendants.

132.    Plaintiff and Class Members are entitled to recover punitive damages in accordance with Arkansas law, based upon the Defendants' complete indifference to and conscious disregard for the confidential information they allowed to be released. The Defendants' wanton and reckless

acts and omissions occurred under circumstances where their conduct, in total disregard of the consequences, would naturally and probably result in injury or damages to Plaintiff and Class Members. The Defendants knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in the public disclosure of private, confidential information, and they continued this conduct with malice and wanton and reckless disregard for the consequences of its actions for which punitive damages should be awarded.

133.    In addition to actual, special, consequential and compensatory damages, Plaintiff and Class Members demand a judgment against the Defendants for punitive damages in an amount necessary and sufficient to deter the Defendants from the above-described conduct and to punish the Defendants for their willful, wanton, gross, flagrant, reckless, outrageous, and egregious conduct.

## DEMAND FOR JURY TRIAL

134.    Plaintiff demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

135.    Plaintiff reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, requests the Court:

A.    For an order certifying the proposed Class, and appointing Plaintiff by and through his counsel of record to represent the proposed Class;

B.    For an order declaring that Defendants have violated their fiduciary duties to Plaintiff and the Class;

C.    For an Order declaring that Defendants have breached their contract of confidentiality with Plaintiff and the Class;

Page 25 of 26

D.    For an Order that Defendants' actions were outrageous so as to cause damages to Plaintiff and the Class;

E.    For an Order declaring that Defendants have acted negligently so as to cause damages to Plaintiff and the Class;

F.    For an order awarding Plaintiff and Class members damages in an amount to be proven at trial, including punitive damages, together with pre-trial and post-trial interest thereon;

G.    For an order awarding Plaintiff and Class members restitution, disgorgement, or other equitable relief as the Court deems proper, including corrective notice;

H.    For an order enjoining Defendants from continuing to engage in the unlawful business practices alleged herein;

I.    For an order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

J.    All other proper relief to which he may be entitled in the premises.

Respectfully Submitted,

Joseph Gates, AR Bar No. 2010239
**Gates Law Firm, PLLC**
6020 Ranch Blvd, Suite C-4, Office #3
Little Rock, AR 72223
Phone: (501) 779 8091
Gates@GatesLawPLLC.com

John Maddox, AR Bar No. 97163
**Maddox & Maddox**
520 Church Avenue
Mena, AR 71953
Phone: (479) 394-6060
john@maddoxmaddox.com

Joe Denton, AR Bar No. 2012167
Justin Zachary, AR Bar No. 2010162
**Denton & Zachary, PLLC**
2100 Riverdale Road, Suite 200A
Little Rock, Arkansas 72202
Phone: (501) 242-0409
joe@dentonandzachary.com
justin@dentonandzachary.com

By: _____
John Maddox

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 26 OF 34

# EXHIBIT A

 **Catholic Health Initiatives**      **CHI St. Vincent**

# Notice of Privacy Practices

This notice describes how medical information about you may be used and disclosed and how you can get access to this information. Please review it carefully. **Effective date: 4.2003 Revised: 10.2020**

**INTRODUCTION**

**CHI St. Vincent** is a member of CommonSpirit Health, a large health system including Catholic Health Initiatives providers and Dignity Health providers across 21 states. All members of CommonSpirit Health participate in an Organized Health Care Arrangement (the CommonSpirit Health OHCA), so they can share health information within CommonSpirit Health for treatment, payment, and joint health care operations activities. Those joint operations activities may include quality improvement, risk management, financial and billing services, and health information exchanges. You can find a list of all the members of the OHCA here: https://home.catholichealth.net/go/OHCAlisting

Each CommonSpirit Health hospital, clinic, or health care service provider also will share health information with the doctors and many other health care providers who care for patients at the facility.

This notice uses the words "protected health information (PHI)" or "health information." Those words are defined in the HIPAA regulations. In simple terms, your "protected health information" is information about you and your healthcare that we use and disclose for your treatment and payment for your care, and for our healthcare operational purposes. It includes basic identifying information like your name, address, age, race, phone number, as well as information in your medical records and billing records. PHI can be oral, or in paper or electronic formats.

**WHO MUST FOLLOW THIS NOTICE?**

We provide you, the patient, with health care by working with doctors and many other health care providers (referred to as **we**, **our** or **us**). This is a joint notice of our information privacy practices. The following people or groups will follow this notice:

- all CommonSpirit Health members, including hospitals, clinics, home health agencies, outpatient services, mobile units, hospice agencies, skilled nursing facilities, etc.
- any health care provider who comes to our locations to care for you. These professionals include doctors, nurses, technicians, physician assistants and others.
- all departments and units of our organization, including skilled nursing, home health, clinics, outpatient services, mobile units, hospice, rehab facilities, and emergency departments.
- our employees, students and volunteers, including those at regional support
- offices and affiliates.

**OUR PLEDGE TO YOU**

We understand that your protected health information is private and personal. We are committed to protecting it. Hospitals, clinics, doctors, home health and hospice staff, and other staff members make a record each time you visit. This notice applies to all the records of your care at the facility, whether created by staff members or your doctor. Your doctor and other health care providers may have different practices or notices about their use and sharing of protected health information in their own offices or clinics that are not affiliated with CommonSpirit Health. We will gladly explain this notice to you or your family member.

We are required by law to:

- keep your protected health information private.
- give you this notice describing our legal duties and privacy practices for your protected health information.
- notify you as outlined in state and federal law if a breach of your unsecured protected health information has occurred.
- follow the terms of the notice that is currently in effect.

MONTGOMERY COUNTY CLERK    CTX-000000043741    PAGE 28 OF 34

## HOW WE MAY USE AND SHARE YOUR PROTECTED HEALTH INFORMATION

This section of our notice tells how we may use and share your protected health information, including sharing electronically. In situations not covered by this notice or otherwise allowed by law and regulation, we will get a separate written permission from you before we use or share your protected health information. You can later cancel your permission by notifying us in writing.

We will protect your protected health information as much as we can under the law. Sometimes state law gives more protection to your information than federal law.

Sometimes federal law gives more protection than state law. In each case, we will apply the laws that protect your information the most.

**Treatment:** We will use and share your protected health information, both internally and externally, to provide you with health care treatment and to coordinate or manage your treatment with other health care providers. An example is sending medical information about you to your doctor or to a specialist as part of a referral. We may also share your information with other types of health care providers after you leave our facility, such as pharmacies, home health agencies, specialty hospitals, or long-term care facilities.

**Payment:** We will use and share your protected health information so we can be paid for treating you. An example is giving information about you to your health plan or to Medicare. We may also need to give information to your health plan to get approval for certain services or to find out if your plan will pay for certain treatment. We may also share your health information with other health care providers involved in your healthcare, such as your personal physician, anesthesiologist, ambulance services, so that they may receive payment for their services. We may also give your healthcare information to individuals who are responsible for payment for your health care, such as the named insured on your health insurance policy. For example, the person named may receive a copy of an explanation of benefits (EOB) related to your care.

**Health Care Operations:** We will use and share your medical information for our health care operations. A few examples are using information about you for:

- improving the quality of care we give you.
- disease management, wellness management, or population health programs.
- patient surveys.
- training students.
- business planning and administration.
- resolving patient complaints.
- getting or keeping our accreditation.
- compliance and legal services.

We may also share your protected health information with people or companies (called business associates) we use to help us with our operations.

**Family Members, Personal Representatives, and Others Involved in Your Care:** Unless you tell us otherwise, we may share your protected health information with your friends, family members, or others you have named who help with your care or who can make decisions on your behalf about your health care. Also, if you cannot agree due to an emergency, we may share needed protected health information about you with your family or friends who are involved in your care, based on professional judgment of what is in your best interest. In rare instances, even without your permission, we may share your information with others if the physician or health care provider feels it is in your best interest.

**Electronic Sharing and Pooling of Your Information:** We may take part in or make possible the electronic sharing or pooling of healthcare information. The most common way we do this is through local or regional health information exchanges (HIEs). Two other types of HIEs we participate in are described in the next two sections. HIEs help doctors, hospitals and other healthcare providers within a geographic area or community provide quality care to you. If you travel and need medical treatment, HIEs allow other doctors or hospitals to electronically contact us about you. All of this helps us manage your care when more than one doctor is involved. It also helps us to keep your health bills lower (avoid repeating lab tests). And finally, it helps us to improve the

Page 2 of 7

overall quality of care provided to you and others. We are involved in national health reform efforts and may use and share information as permitted to achieve regional or national goals, including regional or nationally approved population health management or wellness initiatives.

**CommonSpirit Health's Health Information Exchange.** As a member of the CommonSpirit Health OHCA, this facility participates in the CommonSpirit Health Health Information Exchange (HIE). Your health information is stored electronically, and doctors employed by, or associated with CommonSpirit Health OHCA members may use and share your health information for treatment, payment, and health care operations.

**State-Based Health Information Exchange.** This facility may participate in statewide internet-based HIE. As permitted by law, your health information will be shared through the HIE to provide faster access, better coordination of care and to assist healthcare providers, health plans, and public health officials in making more informed decisions. To opt in or out of the HIE, you must notify the HIE yourself. To obtain the HIE contact information, please visit: https://www.catholichealthinitiatives.org/content/dam/chi-national/website/corp-resp-/HIE%20Master%20list%20for%20posting.pdf or contact the facility privacy officer.

**Facility Directory:** The directory is available so your family, friends, and clergy can visit you and know how you are doing. Unless you tell us otherwise, we may list your name, location in the hospital, your general condition (good, fair, etc.) and your religion in our directory. We will give this information (except your religion) to anyone outside the organization who asks about you by name. An example is telling your hospital room number to a florist who is delivering flowers to you. Your religion will be given only to appropriate clergy members. If you do not want your name in the directory, please tell the registration personnel. If your name is not in the directory, we cannot tell members of the public or even your family or friends that you are in our facility.

**Fund-raising Activities:** We may use limited information to contact you for fundraising. We may also share such information with our fundraising foundations. You may choose to opt out of receiving fund-raising requests if you are contacted.

**Research:** We may use and share your protected health information for research projects, such as studying the effectiveness of a treatment you received. We will usually get your written permission to use or share your information for research. Under certain circumstances, we may share your protected health information without your written permission. These research projects, however, will be approved by a special committee that protects the confidentiality of your medical information.

**Organ and Tissue Donation:** We may share your protected health information with organizations that handle organ, eye or tissue donation or transplantation.

**Appointment Reminders:** We may contact you by phone, email or text messaging with appointment reminders.

**Internet Based Products and Services:** Working with third parties, we may share your health information so we can offer you internet-based products or services.
Using the products or services, you can:

- schedule appointments.
- reduce wait times in our emergency rooms.
- find a physician or get access to your medical information through a portal.

**Treatment Options and Health-Related Benefits and Services:** We may contact you about possible treatment options, health-related benefits or services that we offer.

**Health Education and Health Programs:** We may send you newsletters or brochures or contact you about health-related information, disease management programs, wellness programs, or other local programs that you might want.

## INFORMATION SHARING THAT IS REQUIRED OR PERMITTED BY LAW
We are required or permitted by federal, state, or local law to report or share your health information for various purposes. Some of these required or permitted purposes are:

**Public Health Activities:** We may share your protected health information as required or permitted by law to

Page 3 of 7

public health authorities or government agencies whose official activities include preventing or controlling disease, injury, or disability. For example, we must report certain information about births, deaths, and various diseases to government agencies. We may use your health information in order to report to monitoring agencies any reactions to medications or problems with medical devices. We may also share, when requested, your protected health information with public health agencies that track opioid usage, contagious diseases or that are involved with preventing epidemics.

**Required by Law:** We are sometimes required by law to report certain information. For example, we must report child and elder abuse and neglect, and in some states, spouse abuse or neglect. We are required to report certain types of injuries, such as injuries caused by firearms. We also must give information to your employer about work-related illness, injury or workplace-related medical surveillance. Another example is that we must share information about tumors with state tumor registries.

**Public Safety:** We may, and sometimes must, share your health information in order to prevent or lessen a serious threat to you or to the health or safety of a particular person or the general public.

**Health Oversight Activities:** We may share your health information with a health oversight agency when allowed by law for health oversight activities. Health oversight agencies include the agencies that run Medicare and Medicaid, and state medical or nursing licensing boards. Health oversight activities include audits, investigations, or inspections. The activities are necessary so the government can monitor health care treatment and spending, government programs and also compliance with civil rights laws.

**Coroners, Medical Examiners and Funeral Directors:** We may share health information about deceased patients with coroners, medical examiners and funeral directors to identify a deceased person, determine the cause of death, or other duties as permitted.

**Military, Veterans, National Security and Other Government Agencies:** We may use or share your health information for national security purposes, intelligence activities or for protective services for the President or certain other persons as allowed by law. We may share your health information with the military for military command purposes when you are a member of the armed forces. We may share medical information with the Secretary of the Department of Health and Human Services for investigating or determining our compliance with HIPAA.

**Judicial or Administrative Proceedings:** We may use or share your health information in response to court orders or subpoenas only when we have followed procedures required by law.

**Law Enforcement:** We may share your health information if law enforcement officials ask us to or if we have a legal obligation to notify the appropriate law enforcement or other agencies:

- in response to a court order, subpoena, warrant, summons or similar legal process.
- regarding a victim or death of a victim of a crime in limited circumstances.
- in emergency circumstances to report a crime, the location or victims of a crime, or the identity, description or location of a person who is alleged to have committed a crime, including crimes that may occur at our facility, such as theft, drug diversion, or attempts to obtain drugs illegally.

**Disaster Relief Purposes:** We may use or share your health information with public or private disaster organizations, like the American Red Cross, so that your family can be told of your location and condition in case of disaster or emergency. We may also use it to help in coordination of disaster relief efforts.

**Workers' Compensation:** We may share your health information for workers' compensation benefits or similar programs that provide benefits for work-related injuries or illnesses if you tell us that workers' compensation is the payer for your visit(s). Your employer or workers' compensation carrier may request the entire medical record for your workers' compensation claim. This medical record may include details regarding your health history, current medications you are taking, and treatments.

**Inmates:** If you are an inmate of a correctional institution or in the custody of a law enforcement official, we may share your health information with the institution or law enforcement official. We may do this for the institution to provide you with health care, to protect your health and safety or the health and safety of others, or for the safety and security of the correctional institution.

Page 4 of 7

## OTHER USES AND DISCLOSURES OF YOUR HEALTH INFORMATION

Apart from what we say in this Notice, we will not use or share your health information unless we get your written permission. Under HIPAA, this permission is called an "authorization." If you give us written permission to use or disclose your health information, you may revoke (take back) that permission in writing at any time. If you revoke your permission, we will no longer use or disclose your health information for the purpose involved. However, we cannot retrieve any disclosures that we already made based on your prior permission.

We will get your written permission to use and disclose your health information for these specific purposes when required by law:

### Marketing

Marketing means to make a communication about a product or service that you may be interested in buying. If we send a marketing communication to you about a non-CommonSpirit Health service or product, or if we receive payment from a third party in order for us to promote a product or service to you, then we are required to get your written permission before we can use or disclose your health information.

We are not required to get your written permission to talk with you in person or send you information about the following:

- health care treatment options.
- health-related products and services that are provided by CommonSpirit Health.
- case management or care coordination services.
- recommended alternative treatments, therapies, providers, or settings of care.
- samples or promotional gifts of nominal value.

You have the right to revoke (take back) your marketing permission and we will honor the revocation. To find out who to contact for opting out of these communications, please contact the Privacy Officer.

### Psychotherapy Notes

Psychotherapy notes are special notes by a mental health professional that document or analyze the contents of a conversation during a private counseling session or a group, joint, or family counseling session. Psychotherapy notes are kept separate from the rest of your health information, and they may not be used or disclosed without your written permission, except as may be required by law.

### Sensitive Medical Information

We may obtain a written permission from you, when required by state and federal laws, to use or share sensitive medical information, such as mental health, substance abuse, or genetic testing information.

### Sale of Health Information

We will obtain your authorization for any disclosure of your health information if we directly or indirectly receive remuneration (money or other valuable things) in exchange for the health information.

### THIS NOTICE DOES NOT APPLY TO THE FOLLOWING HEALTH RELATED ACTIVITIES

Some activities may not be covered by this notice and are referred to as Hybrid activities under HIPAA. If you seek services at our wellness or health fairs, for occupational health services, employee health related services, research activities conducted by academic institutions after your information has been legitimately sent to them, or direct access lab services, this notice and HIPAA do not apply.

---

## YOUR RIGHTS REGARDING YOUR HEALTH INFORMATION

Your rights are listed below. Some of the rights require a written request form. You can get the appropriate written request form from the departments outlined below.

**Requesting Your Information (Access or Copy):** In most cases, when you ask in writing, you can look at or get a copy of your protected health information in your medical records or applicable parts of your billing record in paper or electronic format. You may also request that we send electronic copies directly to a person or entity chosen by you. We will give you a form to fill out to make the request. You can look at medical information

Page 5 of 7

about you for free. If you request paper or electronic copies of the information, we may charge a fee to cover the cost of copying, mailing, and supplies. To request a copy of your information, contact the Medical Records/ Health Information Management department or physician practice administrator for the hospital, clinic, or facility.

If we say no to your request to look at the information or get a copy of it, we will tell you why in writing. Also, you may ask us in writing to review that decision. A health care professional will review your request and the decision. The person who makes the review will not be the same person who said no to your request. We will follow the outcome of the review.

**Correcting Your Information (Amendment):** If you believe that information about you is wrong or not complete, you can ask us in writing to correct the records (make an amendment). We will give you a form to fill out to make the request. We may say no to your request to correct a record if the information was not created or kept by us or if we believe the record is complete and correct. If we say no to your request, you can ask us in writing to review that denial.

**Obtaining a List of Certain Disclosures (Accounting of Disclosures):** You can ask to receive a list of certain disclosures we have made of your protected health information during the last six years. To get the list, ask for the Accounting of Disclosures Form from the Medical Records/Health Information Management department or the Privacy Officer. Your request must be in writing and state the time period (up to six years) for the listing. The first request in a 12-month period is free. We will charge you for any additional requests for our cost of producing the list. We will give you an estimate of the cost when you request the additional list.

**Right to Ask for Confidential Communications:** You have the right to ask us to communicate with you about health care matters in a certain way or at a certain address. For example, you can ask that we only contact you at a different location from your home address, such as work, or only contact you by mail instead of by phone. Your request must tell how or where you want to be contacted. We do not require a reason. We will agree to all reasonable requests.

**Right to Ask for a Restriction:** You can ask in writing that we limit our use or sharing of your protected health information for treatment, payment and operational purposes. We are not required to agree to most requests. Any time you make a written request, we will consider the request and tell you in writing of our decision to accept or deny your request. We are legally required to agree to only one type of restriction request: if you have paid us in full for a health procedure or item for which we would normally bill your health plan, we must agree to your request not to share information about that procedure or item with your health plan. For example, if you saw a counselor and paid in full for the services rather than submitting the expenses to your health plan, you may ask that your health information related to the counseling not be shared with your health plan.

**Right to Receive Notice of a Privacy Breach:** We will tell you if we discover a breach of your health information. Breach means that your health information was disclosed or shared in an unintended way and there is more than a low probability that it has been compromised. The notice will tell you about the breach, about steps we have taken to lessen any possible harm from the breach, and actions that you may need to take in response to the breach.

**Right to a Paper Copy of This Notice:** You have the right to a paper copy of this notice. If you have received this notice electronically, you still can have a paper copy of this notice. You may ask us to give you a copy of this notice at any time.

**To ask questions about any of these rights, or to obtain a paper copy of this notice, contact the Privacy Officer. You may also obtain a copy of this notice at our website.**

**CHANGES TO THIS NOTICE**
We may change our privacy practices from time to time. Changes will apply to current medical information, as well as new information after the change occurs. If we make an important change, we will change this notice. We will also post the new notice in our facilities and on our website. You can ask in writing for a copy of this notice at any time by contacting the facility's Privacy Officer. If our notice has materially changed, we will give you a copy of the notice the next time you register for treatment.

Page 6 of 7

## DO YOU HAVE CONCERNS OR COMPLAINTS?

If you think your privacy rights may have been violated, you may contact us at PrivacyOffice@CommonSpirit.org, or call 1-800-845-4310, or contact the facility's Privacy Officer. You may also send a written complaint to the U.S. Department of Health and Human Services, Office of Civil Rights at OCRComplaint@hhs.gov or Centralized Case Management Operations, U.S. Department of Health and Human Services, 200 Independence Avenue, S.W., Room 509F HHH Bldg., Washington, D.C. 20201. We will not take any action against you or change our treatment of you for filing a complaint.

## CONTACT INFORMATION

Privacy Officer
Phone: Toll Free (833) 775-1257  Email: PrivacyOffice@CommonSpirit.org

Page 7 of 7